IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALISHA L. GORDON | * |
| | *    Civil Action No. CCB-20-3544 |
| v. | * |
| | * |
| MARYLAND DEPARTMENT OF | * |
| PUBLIC SAFETY AND | * |
| CORRECTIONAL SERVICES | * |
| | * |

******

## MEMORANDUM

This discrimination action involves a dispute between Alisha Gordon and her employer, the Maryland Department of Public Safety and Correctional Services ("the Department"). Gordon, who is representing herself, raises claims that the Department failed to accommodate her disability, subjected her to unequal terms and conditions of employment, retaliated against her, and constructively discharged her. Now pending before the court is the Department's motion to dismiss. (ECF 10). The matter has been fully briefed and no oral argument is necessary. *See* Local Rule 105(6) (D. Md. 2021). For the reasons discussed herein, the motion will be granted.

## BACKGROUND

Alisha Gordon was hired by the Maryland Department of Public Safety and Correctional Services in February 2000. (ECF 1, Compl., at 6). Ms. Gordon sustained a knee injury while working in August 2013, for which she took workers compensation. (*Id.*). Approximately two years later, on August 6, 2015, Human Resource representative Ilene Rivkin advised Ms. Gordon to return to work on "light duty" assignments. (*Id.*). In December 2015, the light duty assignment was made permanent, this change was forward to Human Resources, and Ms. Gordon was not addressed about her disability afterward. (*Id.*).

1

From some time in December 2017 until February 14, 2018, Ms. Gordon took leave to receive surgery on her knee. (*Id.*). When she went to headquarters later that day to submit her return to duty note, Human Resources representative Stan Harris told her that she could not return to work on light duty status because she had exhausted the seventy-five days of light duty permitted by policy. (*Id.*). He further advised her that her agency had violated the general policy which limits workers to seventy-five days of light duty assignment and asked her who her administrators were in order to question them about how this was allowed. (*Id.*). Mr. Harris informed Ms. Gordon she should begin the process of applying for medical retirement, and that she was not permitted to return to work. (*Id.*). Human Resources representative Karen Dukes assisted Ms. Gordon with her application for a medical retirement. (*Id.*).

Ms. Gordon alleges that, in February 2018, Division managers were directed to discard documentation related to employees who return to work after an injury. (*Id.*). The Department then discarded the essential duties checklist, which also had not been given to Ms. Gordon upon her return to work earlier in 2015. (*Id.*).

Since 2018, the Department's retirement board has denied Ms. Gordon's request for a medical retirement three times, most recently on October 25, 2019. (*Id.*). Ms. Gordon asserts that the retirement board required her to visit a different doctor when she received a favorable outcome from the doctor she previously visited. (*Id.* at 7). The Office of Administrative Hearings ("OAH") subsequently denied her request on September 21, 2020. (*Id.* at 6). Ms. Gordon did not seek judicial review of the OAH decision because she did not receive a copy before the time for an appeal expired. (*Id.*).

When Ms. Gordon applied for retirement, she received an options letter with four options: to resign; to provide a list of reasonable accommodations; to be cleared to return to previous

employment; or to apply for medical retirement. (*Id.*). Human Resources, however, called her to state that only two of these options were available, which Ms. Gordon understood to mean she was allowed to either resign or to retire. (*Id.*). The Department could not offer her another, transitional position because she had already used the seventy-five days of light duty available under state policy. Ms. Gordon alleges that other employees received paperwork that offered them reasonable accommodations after they received their option letters, and some were given alternative assignments for which Ms. Gordon believes she qualified. (*Id.*). Ms. Gordon also alleges she was never offered transitional work assignments or duties while employed, instead remaining in her regular position. (*Id.*). She states that the Department defended their actions by claiming the Human Resources staff was inexperienced and unfamiliar with workers compensation. (*Id.*).

Ms. Gordon alleges that, in August 2019, she was constructively discharged by being forced to resign "under duress." (*Id.* at 7). She has since been unable to obtain healthcare for herself or her two dependent children, one of whom suffers from chronic illness. Ms. Gordon alleges that the Department's Human Resources staff continued to "harass" her with paperwork, failure to process her documentation, and cancellation of her benefits. (*Id.*).

Based on the foregoing allegations, Ms. Gordon filed an untimely charge with the Equal Employment Opportunity Commission ("EEOC") on August 7, 2020. (*See id.* at 8; *see also* ECF 1-1, EEOC Charge, at 1). Her charge stated that she experienced discrimination based on disability and that she experienced retaliation. (*Id.* at 2-4). Ms. Gordon received a notice of right to sue on September 11, 2020. (*Id.* at 8). She brought this action on December 9, 2020, seeking damages and equitable relief and alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Maryland Fair Employment Practices Act ("FEPA"), and the Americans with

3

Disabilities Act ("ADA"). On March 4, 2021, the Department filed a motion to dismiss (ECF 10), which is now fully briefed and ripe for disposition.

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'"[1] *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). When a plaintiff appears *pro se*, filings are to be "liberally construed" and "however artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

---

[1] The Fourth Circuit Court of Appeals has clarified that plaintiffs are not required to plead facts sufficient to establish a prima facie case to survive a motion to dismiss. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616-17 (4th Cir. 2020). This is because a prima facie case is an evidentiary standard rather than a pleading standard. Therefore, plaintiffs are required only to allege facts to plausibly satisfy the elements of a cause of action created by the relevant statute. *Id.*

## I.     The State of Maryland Has Not Waived Its Eleventh Amendment Immunity to Suit

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment bars suit against a state, state agents, and state instrumentalities absent congressional abrogation of that immunity or the state's clear and unambiguous waiver of its immunity. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984). The Supreme Court held in *Board of Trustees of the Univ. of Alabama v. Garrett* that Congress did not validly abrogate state immunity when enacting the ADA under the enforcement provisions of the Fourteenth Amendment. 531 U.S. 356, 369-70 (2001). There, the Court concluded that the legislative record of the ADA "fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled" that would justify creating a private remedy against the state. *Id.* at 368. Similarly, the Fourth Circuit has concluded that FEPA "does not constitute a consent to suit in federal court." *Michael Pense v. Maryland Department of Public Safety and Correctional Services*, 926 F.3d 97, 103 (4th Cir. 2019) (cleaned up).

Ms. Gordon's claims under Title I of the ADA,[2] 42 U.S.C. § 12101 *et seq.*, as amended, and FEPA, Md. Code Ann., State Govt. § 20-606, are barred by the Eleventh Amendment. Because the Maryland Department of Safety and Correctional Services is a state agency, it is entitled to

---

[2] Ms. Gordon's complaint fails to specify under which Title of the ADA it is brought. The claim may be and is interpreted to be brought under Title I, which prohibits discriminatory hiring and personnel practices by employers against "qualified individuals" with disabilities and requires employers to make reasonable efforts to accommodate mental and physical limitations as long as the accommodations do not present an undue hardship to the employer. 42 U.S.C. §§ 12111-17.

immunity from suit by Ms. Gordon. Accordingly, even assuming the truth of Ms. Gordon's claims, her ADA and FEPA claims must be dismissed.

## II. Ms. Gordon Fails to Plead an Actionable Title VII Violation

Title VII makes it illegal for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Notably, Title VII does not prohibit discrimination on the basis of disability.

Ms. Gordon does not allege discrimination on the basis of her race, color, religion, sex, or national origin. Rather, she has consistently asserted that she was discriminated against on the basis of her disability and then retaliated against because of her requests for accommodation. (*See* ECF 1; ECF 1-1, EEOC Charge, at 1-4). To the extent that Ms. Gordon's complaint could be read to allege discrimination on a basis prohibited by Title VII, such a claim would be subject to dismissal for exceeding the scope of the charge she filed with the EEOC.[3] (ECF 1-1 at 1). Accordingly, the motion to dismiss must be granted as to Ms. Gordon's Title VII claim.

## CONCLUSION

For the reasons stated herein, the Department's motion to dismiss will be granted as to all claims. A separate Order follows.

11/23/21
Date

CCB
Catherine C. Blake
United States District Judge

---

[3] While Title VII also makes it unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter," such practices made unlawful are those that discriminate against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. Therefore, Ms. Gordon's retaliation claim based on the discrimination she alleges she endured due to her disability also would not be covered by Title VII.